## CHARLESTON.

HARPER v. CLEAR FORK COAL & LAND CO.

Submitted April 10, 1917.   Decided April 17, 1917.

1. PLEADING—*Admissions—Effect—Error in Description—Fraudulent Misrepresentations.*

   Admission of a misrepresentation constituting the basis of a recital in a contract, accompanied by an explanation which, if true, shows the existence of the subject matter of the representation and discloses a mere error in the description thereof in the contract, does not prove fraud in the making of the false representation.   (p. 250).

2. SAME—*Admission—Explanation.*

   An admission in a pleading accompanied by an explanation qualifying or limiting its effect, is not to be treated as an unqualified admission.   The admission and the explanation are to be read and considered together.   (p. 250).

3. ALTERATION OF INSTRUMENTS—*Bills and Notes—Action—Failure to Object—Effect.*

   If the maker of a negotiable note disclosing on its face, an alteration thereof respecting its amount, prejudicial to the payee and holder and advantageous to the former, makes no objection to it on the trial of an action thereon, on the ground of such alteration, admits the signature thereto, after inspection, and defends upon a wholly different ground, a jury would be warranted in finding the alteration was made, authorized or assented to by him, wherefore the court, on a demurrer to the evidence, should find the law as to the validity of the note, to be for the plaintiff.   (p. 250).

4. VENDOR AND PURCHASER—*Recovery on Purchase Money Note—Condition Precedent.*

   An agreement on the part of a vendor taking a note of the vendee, for part of the consideration, to sue on the note of a third party for the benefit of the vendee and prosecute such suit, is collateral to the purchase money note and independent thereof, wherefore performance of such agreement is not a condition precedent to right of recovery on the purchase money note.   (p. 251).

5. SET-OFF AND COUNTERCLAIM—*Nominal Damages—Allowance.*

   Mere nominal damages proved as matter of set-off or recoupment is disregarded under the maxim, *De minimis non curat lex,* in the ascertainment of the amount due the plaintiff.   (p. 251).

Error to Circuit Court, Raleigh County.

Assumpsit by H. H. Harper against the Clear Fork Coal & Land Company. Judgment for defendant on sustaining a demurrer to the evidence, and plaintiff brings error.

*Reversed, judgment for plaintiff.*

*A. P. Farley,* for plaintiff in error.

*Alfred D. Preston,* for defendant in error.

POFFENBARGER, JUDGE:

On this writ of error, the plaintiff in an action of assumpsit for the recovery of $330.00 and interest, alleged to be due him on a promissory note, seeks reversal of a judgment rendered therein for the defendant, on a demurrer to the evidence.

Though the defendant interposed a plea of non-assumpsit on which issue was joined, its real defense is founded upon a special plea of confession and avoidance, or a special plea of the kind contemplated by sec. 5, ch. 126 of the Code, alleging failure of consideration of the contract or fraud in its procurement. Its true character is uncertain, for the situation it discloses and the defense it sets up, are unusual and anomalous. It admits the execution and delivery of the note to the plaintiff, for and as part consideration for his conveyance of 20 acres of coal and other minerals to the defendant, and then avers that it was so executed and delivered under and pursuant to a compromise agreement made between the plaintiff, on the one hand, and the defendant and two individuals, on the other, on a date thirty days prior to that of the note, and then sets forth the substance of the agreement and avers non-compliance with a provision thereof, which, it says, imposes an obligation on the plaintiff. It further avers untruthfulness of a representation incorporated in the contract and alleged to have been made by the plaintiff, to the effect that he held a certain note.

A special replication filed by the plaintiff sets forth the compromise agreement in full. It bears date, July 23, 1912, and says it is a part of a compromise made on that day between the plaintiff and the defendant, respecting what it

calls the C. P. Stover tract. It further says the compromise was effected by a deed bearing even date therewith, as to the 20 acres of minerals conveyed to H. H. Harper, the plaintiff, by one Stephen Williams, by a deed dated December 25, 1909. By the contract dated July 23, 1912, Harper agreed to convey 20 acres of mineral to the defendant, for and in consideration of two lots in the city of Beckley at a valuation of $250.00 and the difference between that sum and the amount of a note of Stephen Williams or Stephen Williams and others, held by Harper, and the interest accrued thereon. The contract then says this sum, the difference between the $250.00 and the amount of the Stephen Williams note, is to be evidenced by a one year note with interest, executed by Williams and secured by a deed of trust on his place. Williams is no party to the contract. It is signed by Harper, The Clear Fork Coal and Land Co., Ashton File and W. H. File. It does not say who is to procure the note from Williams or to whom that note is to be payable. As it was to constitute part of the consideration for the conveyance of the mineral, it was almost certainly intended to be made payable to Harper. An additional clause appended to the contract seems to have been intended to make it optional as to both Williams and The Clear Fork Coal and Land Co. It says if Williams "does not agree to this memorandum, Clear Fork Coal and Land Co. may take advantage of same at any time within thirty days from this date, and if it does then H. H. Harper shall sue on the note he holds against said Stephen Williams and prosecute said suit for the benefit of the Clear Fork Coal and Land Co." The signatures to this note or addition are the same as those of the contract to which it is appended. The plaintiff's special replication No. 1, avers an obligation on the part of the defendant to procure the note the parties expected Williams to execute and deliver it to him, and its failure to do so, and charges that, by reason of such failure, the contract became null and void. The special plea and rejoinder of the defendant admit the conveyance of the minerals and execution of the note sued on and aver conveyance of the Beckley lots. By these acts, the defendant took "advantage of" the optional compromise

contract. The plea charges that the plaintiff never had any such note of Stephen Williams as is described by the contract. This the plaintiff's special replication No. 2 admits, but it avers that there was a note executed by Williams and payable to M. E. Harper, his wife, and says that note was the one intended to be described in the contract. It further says a suit was brought on that note by M. E. Harper, which was compromised upon the basis of $500.00, but who got the $500.00, or whether it was ever paid, or whether the judgment is worth anything, neither this special replication nor any other pleading discloses. The plaintiff's special replication No. 3, charges that Stephen Williams conveyed to the defendant four acres of land, in consideration of his promise to pay the note sued on. From these pleadings, it may be safely inferred and gathered that the plaintiff conveyed to the defendant the 20 acres of minerals and that the defendant conveyed to the plaintiff the two lots and executed and delivered to the plaintiff its note for the sum of $330.00, dated August 24, 1912, and payable twelve months after date. Both parties admit the existence of the compromise contract. Another admitted fact is that the Stephen Williams note referred to in the contract was not payable to H. H. Harper. The defendant replied generally to the plaintiff's special replications Nos. 2 and 3, and no proof of the averments thereof was adduced.

On the trial, the plaintiff produced the note declared upon, proved the origin and non-payment thereof, by his own testimony, introduced it and called Ashton File, the president of the defendant company, as a witness, who stated that he had signed the company's name to it and admitted that it had not been paid. On cross-examination, he stated it had been executed in pursuance of the contract referred to in the pleadings, and that it had not been paid because the plaintiff had refused to comply with the contract. At this point, the plaintiff rested his case and the defendant moved to strike out the note. Thereupon, the plaintiff again took the stand and proved his title to the note and asked leave of the court to have a Mr. Hedrick explain an erasure thereon. This having been done, the defendant withdrew its

motion to strike out the note, and entered its demurrer to the evidence, in which the plaintiff joined.

Plaintiff's admission in one of his special replications, that the note of Stephen Williams, referred to in the compromise agreement was not payable to him, as there represented, accompanied by the explanation that the note intended to be described in the contract was a note of Stephen Williams, payable to his wife, does not prove perpetration of a fraud upon the defendant. The explanation made must be taken and considered with the admission. *Brown* v. *Com.,* 9 Leigh 634; *Earhart* v. *Com.,* 9 Leigh 676. Taken together, they prove no more than an innocent mistake made in the preparation of the contract.

A stipulation signed by the parties and filed on the hearing, establishes an alteration in the note sued on, respecting the amount thereof. The words, ''Three Hundred and Fifty Dollars'' were written in the note with a pen. Then the word ''Fifty'' was erased and the word ''Thirty'' written in lieu thereof, in type, and placed in parenthesis marks. This is the erasure the plaintiff proposed to explain, when the defendant withdrew its motion to exclude the note. Though the alteration was material, Code, ch. 98a, sec. 125, it did not render the note void as to all parties. Code, ch. 98a, sec. 124. It was good and valid as to any party who had himself made, authorized or assented to, the alteration, and, if the plaintiff could have proved by Hedrick, that the defendant had itself made the alteration, or authorized it to be made, or assented to it, there would have been right of recovery. The defendant's acquiescence in the admission of the note as evidence, its admission by the testimony of its president, of the execution thereof, after he had seen it in its altered condition, its assignment of a ground or reason for nonpayment, other than the alteration and the favorableness of the alteration to the defendant, render it unnecessary to enter upon any discussion of the presumptions and rules as to the burden of proof, applicable in issues pertaining to alteration of instruments. These circumstances would have amply sustained a finding by the jury, if the question had been submitted to it, that the alteration was made at or be-

fore delivery of the note, by the defendant or with its knowledge and consent, or afterwards with its knowledge and consent. Reduction of the amount from $350.00 to $330.00 was against the interest of the plaintiff and to the advantage of the defendant. This circumstance negatives any inference of fraudulent conduct on the part of the plaintiff, respecting the alteration.

The note proves the indebtedness alleged, and the contract set up by the plea neither makes the note conditional nor shows lack of consideration. The plaintiff's agreement to sue Williams for the defendant's benefit was collateral or independent and performance thereof was not a condition precedent to right of recovery on the note. The defendant promised to pay the plaintiff the $330.00 and look to Williams for reimbursement, using the plaintiff's name and the note he claimed to have as the basis of its demand. If the plaintiff had no such note as the contract described, or, having it, failed to sue on it, or to permit the defendant to do so in his name, he was liable for damages for breach of his independent covenant or agreement, and such damages might constitute a set-off against the note, or a ground of recoupment. But there is no proof of any damages. It does not appear whether a judgment against Williams would be worth anything or whether he had a good defense to the note. Manifestly, therefore, the defendant has nothing in proof with which to reduce the amount due from it on the note, except mere nominal damages which need not be considered in the ascertainment of the amount for which judgment should be rendered. *De minimis non curat lex.*

For the reasons stated, the judgment complained of will be reversed, the demurrer to the evidence overruled and judgment in favor of the plaintiff entered here for the sum of $383.95, as of the 15th day of May, 1915, with interest thereon from said date until paid, and his costs in the court below as well as in this court.

*Reversed, judgment for plaintiff.*