PER CURIAM:
Claimant, an inmate at Mount Olive Correctional Complex, brought this claim to recover the value of colored paper taken from his cell, funds deducted from his prison trustee account for items he did not receive, overcharges on postage paid on outgoing mail, and a rug that was lost in the prison laundry.[1] Mount Olive Correctional Complex is a facility or respondent in Fayette County. Each claim will be addressed separately by the Court. The Court is of the opinion to make an award in part II of this claim and deny the rest of the claims for the reasons more fully set forth below.
I
*232 On the 8th day of August, 2000, Mount Olive Correctional Complex was under a state of emergency. All items, except for clothing were removed from each inmates cell. Eventually, the property was returned to the inmates. When claimant received his property, he discovered that his colored paper was missing. Respondent informed claimant that the paper had been confiscated because it was considered contraband in the administrative segregation unit, pursuant to Revised Operational Procedure Number 3.10, which was established on the 23rd day of August, 1996. According to Unit Manager for the Segregation Unit Lieutenant Robert Daniel, any item not specifically mentioned in the policy is considered contraband. Respondent gave claimant the option of either returning the paper or having it destroyed. Claimant testified that the paper was necessary for his legal work, pursuant to Rules of the United States Supreme Court Rule 33. Claimant filed a grievance in order to be allowed to have the colored paper. Before claimant’s grievance was heard, the colored paper was destroyed. The value of the paper was estimated to be the amount of $5.19.
II
Claimant testified that he placed an order at the prison exchange, but did not receive any of the items that he ordered, nor were any items returned by him. According to claimant, receipts before and after the week of the 2nd day of November, 1999, establish that his account was charged $13.13 for items he did not receive. According to Exchange Supervisor Angela Carpenter, an order was placed, but she did not know what happened to it. Ms. Carpenter testified that items are placed in bags and then placed in carts. Afterwards, the carts are placed in the multipurpose room where inmates sign for packages. Respondent did not have any receipts accounting for the $13.13 difference in the aforementioned receipts. Claimant’s requests for his account to be credited the $13.13 difference have thus far been denied by personnel at the Complex.
III
In early December of 1999, claimant signed a blank money voucher in order to have a package mailed. The voucher cleared his prison trustee account on the 17th day of December, 1999. When claimant received a printout of his mail transactions, he discovered that the voucher had been made for the amount of $4.18. Claimant testified that he had been notified that the package cost only $1.60 to mail. According to Account Technician Rita Dunlap, money vouchers are not to be completed unless completely filled out. Ms. Dunlap testified that the Post Office checks vouchers and that her responsibility is to clear the amount of the vouchers for the Post Office. Moreover, Post Office Supervisor Patricia Hanshaw testified that only legal letters are logged. Personal letters by inmates are not logged. Thus, if an inmate has more that one personal letter, then these are totaled together and placed on one voucher. Ms. Hanshaw further testified that vouchers are not always filled out. *233 In addition, Ms. Hanshaw testified that if an inmate was overcharged, then the Post Office reimburses that inmate.
IV
In June of 2000, claimant sent two bags of laundry to the prison laundry. One bag contained a three feet'wide by five feet long rug. Claimant had purchased the rug from the prison exchange for the amount of $17.00. Upon receiving his returned laundry items, claimant inspected his laundry and discovered that the rug was missing. Claimant filed a grievance, but the rug was not found.
The position of respondent is that it was not responsible for personal items lost in the laundry. Pursuant to Mount Olive Correctional Complex Operational Procedure Number 3.49, the facility is not responsible for personal property items lost in the prison laundry. According to Supervisor I Benton Petry, the facility’s policy was in place at the time of the incident and made known to inmates. Mr. Petry stated that when a mix-up occurs in the laundry, efforts are made to determine ownership and to return the laundry items. Further, Correctional Magistrate Joseph B. Coy testified that efforts have been made to reduce the loss of laundry items due to extortion.
CONCLUSION
With regard to laundry items in part I of this claim, respondent allows inmates to have personal property items. If an inmate chooses to have such personal property items, then that inmate has a duty to secure and document such items. On prior occasions, this Court has held that inmates assume the risk for personal property items that are sent to the prison laundry. Skaggs vs. Division of Corrections, 21 Ct. Cl. 181 (1997).
In the present claim, claimant chose to have a rug in his cell. He assumed the risk of loss when the rug was sent to the prison laundry. Consequently, there is insufficient evidence of negligence on the part of respondent upon which to base an award for the missing rug.
With regard to part II of this claim, the amount of $13.13 appears to the Court to be an amount due and owing to the claimant. The respondent maintains these accounts at the prison exchange for and on behalf of each inmate and it is responsible for these accounts. Respondent could not establish that claimant’s account was maintained accurately; therefore, the Court is of the opinion that claimant may recover the $13.13 which is missing from this particular account.
As to the other claims as described herein above, the Court is of the opinion that c laimant m ay h ave s ustained a loss, as ar esult o f t he a ctions o f r espondent. However, the Court is further of the opinion that the maxim de minimis non curat lex is applicable to this claim. This venerable principle of the common law stands for the proposition that the law does not care for, or take notice of, very small or trifling matters. B lack’s Law Dictionary, 297 ( 6th ed. 1990). U nder this principle, mere *234 nominal damages proved as a matter of set-off or recoupment are disregarded in the ascertainment of the amount due a claimant. Harper vs. Coal & Land Co., 80 W.Va. 246; 92 S.E. 565 (1917). The Court has determined that the controversy in these claims involves damages which are inconsequential in regards to the sustained loss. Consequently, the rest of the claims should be disallowed.
In accordance with the findings of fact and conclusions of law stated herein above, the Court is of the opinion to make an award in the amount of $13.13 and to deny the remainder of the claim.
Award of $13.13.

 Claimant originally filed this claim as CC-00-199. However, claimant later filed the claim CC-00-238, which revised, incorporated and added to CC-00-199. Afterwards, claimant dismissed CC-00-199.